IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| WALTER E. MARTIN, | § |
| Plaintiff, | § |
| v. | § CIVIL ACTION NO. G-04-319 |
| BAYLAND INCORPORATED, | § |
| Defendant. | § |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF**

This age discrimination case arises out of the termination of Walter Martin's ("Plaintiff") employment with Bayland Inc. ("Defendant"). Now before the Court comes Defendant's Motion for Summary Judgment, Plaintiff's Cross-Motion for Partial Summary Judgment, and Plaintiff's Motion for Injunctive Relief. For the following reasons, Defendant's Motion is **GRANTED**, and Plaintiff's Motions are **DENIED**.

I. Background

Defendant is a plastics extrusion business located in Manvel, Texas. Plaintiff began his employment with Defendant in approximately 1982 at the age of 51. He worked as an operator, meaning that he operated the manufacturing equipment on the shop floor. Plaintiff has a disability—his right side is weaker than his left. However, that did not prevent him from doing

-1-

his job without special accommodations. In 1989, after an on-the-job fall in which he crushed four fingers, he was transferred to a new position, that of quality control assurance manager. He still worked as an operator on a fill-in basis. In 2002 and 2003, Defendant operated at a loss. Several employees left the company through layoff, termination, or voluntary departure and were not replaced. Jim Moses ("Moses"), the owner of Defendant, states that in October 2002, he decided that he would have to lay off Plaintiff as well, but he did not tell Plaintiff at that time.

On December 19, 2002, Plaintiff fell in his office. He was discovered by another employee, Betty Cessna. Plaintiff was able to drive himself home, but he fell again in his yard and was taken to Matagorda General Hospital. He underwent hip replacement surgery on December 20, 2002. Plaintiff began receiving workers' compensation benefits in January 2002. Defendant did not contest the claim. Moses informed Plaintiff by telephone in January 2003 that he had been terminated. Plaintiff contends that Moses told him that it was time to retire, and therefore Defendant discriminated against him because of his age. Moses says that he respected Plaintiff and did not want to use the word "fired." (Moses Dep. at 25-26.) Moses contends that he terminated Plaintiff because of economic conditions; in Defendant's answers to interrogatories, Defendant also stated, "[a]dditionally, the Plaintiff was unable to perform his duties in a safe manner," a reference to Plaintiff's history of falling that Moses believed constituted a safety hazard. Plaintiff's history of falls is contested. He states that he only remembers three specific falls, one being the one in December 2002, one on uneven concrete in the parking lot, and the one that caused his hand injury in 1989. However, he admits that he may have tripped other times, and his reason for disbelieving other employees' testimony of more

frequent falls is that he does not believe they have better memories than he does.  (Martin Dep. at 38-41, 106-118.)

Plaintiff received workers' compensation until March 2004.  On March 16, 2004, he had surgery to remove a cancerous tumor on one of his lungs.  He was not cleared to return to work until June or July of 2004.  He began to look for work in November 2004, but received only one response, which was for a job that paid significantly less than his job with Defendant.  Plaintiff declined the job.  On several occasions in 2005, Defendant offered Plaintiff contract work that he could do at home.  Plaintiff, through his attorney, has rejected these offers because Plaintiff does not believe that the contract work would offer the same pay, benefits, and job security as his previous position with Defendant.

In October 2004, after Plaintiff filed this suit, Defendant altered its employee handbook to state that all employees over 65 would have to retire, though exceptions would be considered on a case-by-case basis.  Moses states that he had this added because he was upset about the suit, but he did not use the provision and had it removed several months ago.

Plaintiff claims that Defendant violated the Age Discrimination in Employment Act, 29 U.S.C. § 623 ("ADEA"), and the Texas Commission on Human Rights Act, Tex. Lab. Code Ann. § 21.051 and 21.125 (Vernon 1996) ("TCHRA").  Plaintiff also makes an intentional infliction of emotional distress ("IIED") claim.  Defendant moves for summary judgment on all claims.  Plaintiff moves for summary judgment as to liability on his age discrimination claim. Plaintiff also moves for an injunction to prevent Defendant from firing anyone over the age of 65.

**II. Summary Judgment Standard**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552–53, 91 L. Ed. 2d 265 (1986). The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. The non-moving party must come forward with "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). The court must view all evidence in the light most favorable to the non-movant. *See, e.g., Broussard v. Parish of Orleans*, 318 F.3d 644, 650 (5th Cir. 2003), *cert. denied*, 539 U.S. 915, 123 S. Ct. 2276, 156 L. Ed. 2d 130 (2003). If the evidence would permit a reasonable fact finder to find in favor of the non-moving party, summary judgment should not be granted. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

**III. Analysis**

*A. ADEA and TCHRA Claim*

*1. Legal Standard*

The ADEA prevents an employer from discriminating against an employee on the basis of age. *See* 29 U.S.C. § 623. A plaintiff may base a discrimination claim on direct or circumstantial evidence. *See, e.g., Sandstad v. CB Richard Ellis*, 309 F.3d 893, 896 (5th Cir.

2002).  If a plaintiff has direct evidence, the burden of persuasion then falls on the defendant to show that it would have taken the same action "regardless of discriminatory animus."  *Id*.  If a plaintiff has only circumstantial evidence, then the plaintiff must make the prima facie case described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973), as modified for the ADEA.  *See Sandstad*, 309 F.3d at 897.  Then the defendant must offer a legitimate, nondiscriminatory reason for the action.  *See id*.  The plaintiff then has the burden of proving that either the defendant's explanation is false or pretextual, or that discrimination was nonetheless a motivating factor in the decision.  *See Machinchick v. PB Power, Inc.*, 398 F.3d 345, 352 (5th Cir. 2005).  If the plaintiff is successful, then the defendant must show that the action would have been taken regardless of the discriminatory animus.  *See id*.  Claims under Tex. Lab. Code Ann. § 21.125 (Vernon 1996), which prohibits an employer from discriminating against an employee on the basis of age, are analyzed using the same framework, except that the plaintiff must show only that age was "a motivating factor" regardless of whether the plaintiff has direct or circumstantial evidence.  *See Machinchick*, 398 F.3d at 356, quoting *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex. 2001).

*2. Question of Direct Evidence*

Plaintiff contends that he has direct evidence of discrimination:  Moses told him it was time to retire.  "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption."  *Sandstad*, 309 F.3d at 897.  Statements that courts have found to be direct evidence of discrimination have tended to be insults or slurs against the

protected group.[1]  Moses stated that he did not want to use the word "fired" in his conversation with Plaintiff because he was trying to be nice.  When someone is 72 years old, well past the reasonable entitlement age for company and government retirement programs, telling him that it is "time to retire" instead of saying, "you're fired," does not prove discriminatory animus without inference.  When an employee is that age, an employer could well assume that the employee would not desire to seek further employment after being fired.  Retirement is not a slur; many people look forward to it.  *See, e.g., Louis v. Encore Computer Corp.*, 949 F. Supp. 836, 838 n.3 (S.D. Fla. 1996) (an employer's statement that he hoped he could retire at the plaintiff's age did not constitute direct evidence of discrimination).  Therefore, Plaintiff's evidence is only circumstantial.

3. *Prima Facie Case*

Since Plaintiff's only evidence is circumstantial, he must first make out a prima facie case of discrimination.  Plaintiff must show that:  1) he was over forty years of age; 2) he was discharged; 3) he was qualified for the position; and 4) the employer filled the position with a younger person, retained younger employees in the same position, or otherwise discriminated on the basis of age.  *See Brown v. CSC Logic, Inc.*, 82 F.3d 651, 654 (5th Cir. 1996); *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996); *Bodenheimer v. PPG Industries, Inc.*, 5

---

[1] In the context of age discrimination, examples of direct evidence include statements such as "over the hill," "has been," and "too old to do the job."  *Jackson v. GTE Directories Serv. Corp.*, 734 F. Supp. 258, 267 (N.D. Tex. 1990); *see also Mooney v. Aramco Servs. Co.*, 53 F.3d 1207, 1217 (5th Cir. 1995) (citing racial or gender slurs like "macho" and "overcompensated for being a woman" as direct evidence of discrimination). Asking an employee when he or she plans on retiring can constitute evidence of discriminatory intent, but it has not been found to be direct evidence of discrimination.  *See Machinchick*, 398 F.3d at 353-354; *Guthrie v. J.C. Penney Co.*, 803 F.2d 202, 208 (5th Cir. 1986).

F.3d 955, 957 (5th Cir. 1993); *Gold v. Exxon Corp.*, 960 S.W.2d 378, 381 (Tex.App.—Houston [14th Dist.] 1998, no writ).

Both Parties agree that Plaintiff was over 40 years of age and that he was discharged. Defendant disputes whether Plaintiff was qualified for the position, arguing that part of the reason for Plaintiff's termination was the fear that Plaintiff would fall and injure himself and others. Plaintiff contends that he was qualified because he was able to do his job up until the December 2002 injury, and he was released to go back to work in the summer of 2004. Of course, the factual underpinnings of Defendant's belief do not have to be correct; it is the Defendant's belief as to Plaintiff's inadequate performance that matters. *See Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991). Plaintiff states that by Defendant's logic, Plaintiff should have been fired after his first fall. However, Defendant appears to have been concerned about a pattern of falling, not an isolated incident.

Oddly, Plaintiff also argues that he was qualified to do his job even after his injury, even though he could not even stand up by the time he got home, because the employee who found him on the floor of his office was bringing him work do to when she found him. (Martin Dep. at 47-49.) Plaintiff extrapolates from this that he was doing his job after his injury. (Pl. Resp. at 14.) However, there is no evidence that he actually did the work she brought him. In his deposition, he says that they talked for a few minutes and then he clocked out. (Martin Dep. at 49.) The Court need not decide whether Plaintiff has met his burden as to the third prong of the prima facie case, though, because Plaintiff has clearly not met the fourth prong.

Plaintiff has not shown that he was replaced by a younger employee or that Defendant kept other, younger employees in the same job for which he was qualified. Plaintiff was the only quality control assurance manager at the time of his discharge. Defendant did not hire another employee to fill this position, nor was an existing employee moved to this position. At the time Plaintiff was discharged, his job duties were distributed among other existing employees, a fact Plaintiff does not contest. "When a terminated employee's job duties are distributed among other employees after termination, those employees do not replace the terminated employee." *Baker v. Gregg County*, 33 S.W.3d 72, 81-82 (Tex.App.—Texarkana 2000, writ dism'd); *see also Roper v. Exxon Corp.*, 27 F. Supp. 2d 679, 682 (E.D. La. 1998). Plaintiff has not shown that Defendant replaced him with a younger employee.

Since there were no other quality control assurance managers, Plaintiff has not shown that Defendant discharged him while retaining younger quality control assurance managers. While Plaintiff did fill in as an operator, operator work made up only a small part of his duties. Therefore, his position cannot be compared to the full-time operator positions held by younger workers.[2]

Plaintiff argues that because Defendant retained and hired younger operators, Defendant could have moved him to an operator position. However, there is no evidence that Defendant had an operator position available at the time when Plaintiff was able to return to work. Plaintiff

---

[2] Also, the relative ages of the workers have less meaning in this case because most workers are younger than 72. In a case involving a plaintiff between 40 and 60, for example, one would expect an employer to have some workers older than the plaintiff. But since most people do not work past 65 or 70—especially in jobs requiring manual labor—the fact that Defendant's other employees are all younger than Plaintiff is not probative of Defendant's discriminatory intent.

argues that operators were hired in April 2004, after Plaintiff was released to return to work from his hip surgery. Plaintiff does not state that he notified Defendant of his availability to work at that time, probably because he had surgery to remove a lung tumor on March 16, 2004. Notably, three of the six operators that Plaintiff says were hired in 2004 were laid off in the summer of 2004, right about the time Plaintiff was released to return to work after his lung surgery. Even if Plaintiff had been available in March 2004, Defendant is not required to hire Plaintiff to perform a different job or to re-hire Plaintiff for openings occurring after his discharge.[3] *See Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 150 (5th Cir. 1995).

Since Plaintiff has not shown that he was replaced by a younger employee or that Defendant fired him while retaining younger employees in similar positions, Plaintiff is left with showing other evidence of age discrimination as a motive for his termination. Plaintiff alleges that other older employees were fired, laid off, or reduced to part-time work. However, he has no evidence that any of these actions resulted from age discrimination by Defendant. He in fact stated in his deposition that, to his knowledge, Moses had not discriminated against anyone else on the basis of age. (Martin Dep. at 93.) Unfounded speculation about the reasons for the departure of other employees does not provide evidence of age discrimination against Plaintiff. *See Fields v. J.C. Penney Co., Inc.*, 968 F.2d 533, 537-538 (5th Cir. 1992).

---

[3] This case differs from that in *Amburgey v. Corhart Refractories Corp., Inc.*, 936 F.2d 805, 813 (5th Cir. 1991), in which the defendant transferred three younger employees to new positions at a different plant to keep them from being laid off when the one at which they were working closed. If that were the case here, then Defendant would have to show reasons for not putting Plaintiff in a new position as well, but the facts in the two cases are radically different.

In his deposition, Plaintiff mentions that when he began the quality control position, he was not asked to go to plastics trade shows (although he went to two later on), and he believes this was due to his age. (Martin Dep. at 90.)  Plaintiff has no evidence that age discrimination played a part in those decisions, and he himself states that he went to two trade shows later on, when he was even older.  He also stated that sometimes when he worked as an operator, Defendant would have someone assist him with heavy lifting, but while Plaintiff attributed this to age, he also stated that he thought is was because of his disability. (Martin Dep. at 91.)  The fact that Defendant had someone assist Plaintiff with difficult tasks–for whatever reason–shows a sensitivity to Plaintiff's weaknesses, whether perceived or real, rather than an age-based bias.  Plaintiff's evidence therefore boils down to the one comment by Moses about it being time for Plaintiff to retire.  Plaintiff has not disputed Moses's explanation that he used this language because he was trying to be gentle in notifying Plaintiff of his discharge.  The Court finds no reason to doubt this explanation in light of Plaintiff's 20-year employment with Defendant, his 1989 promotion, and his uncontested workers' compensation claims.  As discussed above, Moses's statement does not constitute direct evidence of discrimination.  Plaintiff has provided no additional evidence from which an inference of discrimination can be made.  Therefore, Plaintiff has failed to raise a genuine issue of material fact on this point.

Plaintiff has not met his burden of making out a prima facie case of age discrimination. Not only has he failed to demonstrate a genuine issue of material fact as to whether he was replaced by a younger employee or whether Defendant retained younger employees in the same position, he has produced no evidence at all on these issues.  The one comment by Moses does

not suffice to establish a genuine issue of material fact as to whether Defendant otherwise discriminated against Plaintiff on the basis of age. Therefore, Plaintiff has not made out the required prima facie case.

*4. Pretext Analysis*

Even if Plaintiff had met his burden, Defendant has offered two non-discriminatory reasons for his discharge: a reduction in force due to economic circumstances and concern about the Plaintiff's likelihood of injuring himself and others. Plaintiff has failed to show that these reasons were mere pretext for age discrimination or that age was nonetheless a motivating factor in Defendant's decision. Defendant hired Plaintiff when Plaintiff was already 51 years old, promoted Plaintiff in 1989, and did not contest two workers' compensation claims. Defendant also alleges that it kept Plaintiff on the payroll until January 2003 even though it had decided to terminate him in October 2002 because it did not want to let him go just before the holidays. These actions are not consistent with an employer who has an age bias. Even assuming that Plaintiff only fell three times at work (two with significant injury), that is sufficient for an employer to believe that he could be a safety hazard.[4] While his falls may correlate with age, an employer who considers his propensity for falling does not discriminate based on age. *See Hazen Paper Co v. Biggins*, 507 U.S. 604, 611, 113 S. Ct. 1701, 1707, 123 L. Ed. 2d 338 (1993).

---

[4] Plaintiff incorrectly states that a danger to the employee himself does not justify discharge. However, the Supreme Court has only held that an employer cannot state that a job is too dangerous for a person *because* that person is a member of a protected group. *See Dothard v. Rawlinson*, 433 U.S. 321, 335, 97 S. Ct. 2720, 2729-30, 53 L. Ed. 2d 786 (1977) (holding that under Title VII, an employer may not make a blanket decision that a job is too dangerous for women). If a person is a danger to himself for reasons other than age, an employer may discharge him without triggering liability under the ADEA or TCHRA.

For example, when a worker in his or her 80's or 90's becomes senile and incontinent, it is likely that those conditions are due to age. However, an employer who fires such a worker for being senile and incontinent does not discriminate on the basis of age.

Plaintiff claims that other employees, including Moses, fell at work but were not fired. Plaintiff has not provided enough details about those incidents for the Court to know whether those employees' falls were comparable to those of Plaintiff; for example, the Court does not know whether those employees sustained significant injuries or fell without provocation. One of those employees, Cody Hawes, appears to have been in management, where any propensity for falling may not have caused the same hazard. (Martin Dep. at 30.) The Plaintiff mentions that Moses himself fell, but as the owner, Moses is not expected to fire himself. Additionally, Plaintiff's disability and his hip replacement may have led Moses to believe that Plaintiff's falls represented a pattern rather than isolated incidents.

Plaintiff also argues that his falls never came up in the records of safety meetings. The Court finds this irrelevant to a determination of pretext. Safety meetings are likely to concern matters that employees can improve on. It is the Court's understanding that Plaintiff does not fall on purpose, and there is no evidence that carelessness caused his falls. Therefore, addressing this in a safety meeting would serve no purpose because neither Plaintiff nor any other employee could do anything about it. Moreover, not making a safety issue about it is more in conformity with Defendant's obvious compassion for Plaintiff, not evidence of discrimination. The notes from the safety meetings also contain admonitions that easily encompass falls, such as "think

safety before you start any process" and "watch for slip hazards." (PL. Ex. 9.) It is difficult to imagine records of safety meetings including instructions to specific employees to stop falling.

Defendant's economic reasons for firing Plaintiff are supported by evidence that Defendant operated at a loss in 2002-2003 and now employs about half the workers it had before the downturn. Plaintiff counters that the company was busy throughout his employment, he often worked overtime, and Defendant began to show a profit about the time he was fired. However, an employer is not required to prove that it is *losing* money in order for a its economic reason for discharge to be valid. An employer may fire an employer if by doing so the employer believes it will make more money. *See Armendariz*, 58 F.3d 151-152. The Court cannot substitute Plaintiff's business judgment—or its own—for that of Defendant. Plaintiff's evidence on this point does nothing to undermine the truth of Defendant's reason.

Finally, as discussed at length above, Plaintiff has not raised a genuine issue of material fact as to whether Defendant discriminated against him based on age. In the absence of a genuine issue of material fact as to whether Defendant's non-discriminatory reasons are false, Plaintiff must show that age was nonetheless a motivating factor in Defendant's decision. Since Plaintiff has not produced more than a scintilla of evidence as to age discrimination, Plaintiff has not met this burden. Because Plaintiff has failed to raise a genuine issue of material fact as to at least one element of the prima facie case, as to whether Defendant's reasons are false, and as to age discrimination being a motivating factor, Defendant's Motion for Summary Judgment as to Plaintiff's ADEA and TCHRA claims is hereby **GRANTED** and Plaintiff's Cross-Motion for Partial Summary Judgment is **DENIED**.

*B. IIED Claim*

Under Texas law, a plaintiff must show that "(1) Defendants acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the resulting emotional distress was severe" in order to sustain an IIED claim. *Edwards v. Galveston-Texas City Pilots*, 203 F. Supp. 2d 759, 776 (S.D. Tex. 2002). Plaintiff has shown none of these elements. Plaintiff has not shown that Defendant acted with any intent or recklessness to cause him emotional distress. Plaintiff has not pointed to any behavior by Defendant that could be even remotely called extreme and outrageous. *See id.* (noting that Texas courts have rarely characterized behavior as extreme and outrageous). Plaintiff has not shown that he suffered any emotional distress, and he certainly has not shown that such distress was severe. Plaintiff does not even contest Defendant's Motion on this issue in his Response, and he admitted in his deposition that he did not believe that Defendant acted in an extreme or outrageous manner. (Martin Dep. at 94.) Defendant has demonstrated that no genuine issue of material fact exists on these issues.[5] Therefore, Defendant's Motion for Summary Judgment as to Plaintiff's IIED claim is **GRANTED**. Because Defendant's Motion is **GRANTED**, Plaintiff's Cross-Motion for Summary Judgment on the issue of liability is **DENIED AS MOOT**.

---

[5] Defendant argues that Plaintiff cannot even pursue this remedy because his claim is based on a statutory remedy. In *Hoffman-LaRoche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004), the Texas Supreme Court stated that a common-law IIED claim could not be used "to thwart legislative limitations on statutory claims for mental anguish and punitive damages," and that "[w]here the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available." Because neither Party has made significant argument on this point and because Plaintiff's IIED claim falls so far short anyway, the Court does not feel compelled to decide whether Plaintiff's statutory remedy precludes an IIED claim.

*C. Injunction*

Plaintiff asks for an injunction prohibiting Defendant from firing anyone over 65. Plaintiff bases this request at least in part on the section of Defendant's employee handbook which set 65 as the mandatory retirement age. Since Defendant instituted this policy well after Plaintiff's termination and has since removed it, this fact is irrelevant.

Plaintiff claims that this Court has the power to issue this injunction under 29 U.S.C. § 626(b), which gives federal courts certain powers to enforce the ADEA, and Tex. Lab. Code Ann. § 21.258(a) (Vernon 1996). The Court does not have the power suggested by Plaintiff. 29 U.S.C. 626(b) gives courts "jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of [the ADEA], including without limitation judgments compelling employment, reinstatement or promotion." The purpose of the ADEA is to prevent age discrimination. An employer may have many legitimate, non-discriminatory reasons for firing an employee over 65. Prohibiting an employer from firing an older employee for legitimate reasons does not effectuate the purposes of the ADEA, and such action is therefore outside the power granted by 29 U.S.C. § 626(b).

Tex. Lab. Code Ann. § 21.258(a) (Vernon 1996) allows a court to enjoin a defendant from committing "an unlawful employment practice," but only after finding that the defendant "engaged in an unlawful employment practice as alleged in a complaint." The Court has found that Defendant did *not* engage in an unlawful employment practice. Therefore, the Court has no power under Tex. Lab. Code Ann. § 21.258(a) (Vernon 1996) to issue the requested injunction.

Finally, Plaintiff has no standing to request such an injunction. For a matter to constitute an actual case or controversy, as it must for this Court to have jurisdiction over it, the plaintiff must show an injury-in-fact caused by the conduct in question that is likely to be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992). Defendant implemented the mandatory retirement policy well after firing Plaintiff, so it could not have caused Plaintiff's injury. Even if the Court granted this injunction, it would in no way redress Plaintiff's injury. Because this Court has no power to grant the injunction and because Plaintiff has no standing to pursue such relief, Plaintiff's Motion for Injunctive Relief is **DENIED.**

## IV. Conclusion

Even in the face of current trends of longer life expectancy and longer periods of employment, even into age ranges well beyond the typical benchmark of age 62-65 for retirement, the ADEA and TCHRA cannot possibly mean that employers are obligated to keep employees until death regardless of their ability to work or the employer's need. Plaintiff has failed to establish a genuine issue of material fact as to at least one element of a prima facie case of age discrimination, and he has failed to raise a genuine issue of material fact as to whether age was a motivating factor in his discharge. He has also failed to raise a genuine issue of material fact as to his IIED claim. Finally, this Court has no power to grant the injunctive relief requested by Plaintiff nor does Plaintiff have standing to request such relief. Therefore, Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiff's Cross-Motion for Partial Summary Judgment and Injunctive Relief is **DENIED**.

**IT IS SO ORDERED.**

**DONE** this 31st day of May 2005, at Galveston, Texas.

_____
Samuel B. Kent
United States District Judge